J.A. and E.A., on behalf of M.A., Plaintiffs,

v.

**EAST RAMAPO CENTRAL SCHOOL DISTRICT, Defendant.**

No. 07 CIV 7075–WGY.

United States District Court, S.D. New York.

March 24, 2009.

Gary S. Mayerson, Mayerson and Associates, New York, NY, for Plaintiffs.

Karen S. Norlander, Girvin & Ferlazzo, P.C., Albany, NY, for Defendant.

**Memorandum and Order**

WILLIAM G. YOUNG, District Judge.[1]

■ The plaintiffs, J.A. and E.A. (the "Parents"), seek reimbursement and compensatory damages on behalf of their son, M.A., from the East Ramapo Central School District (the "District") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 et seq. The parties have agreed to treat the matter as a "case stated" under Rule 56 of the Federal Rules of Civil Procedure. *See E.G. v. City Sch. Dist. of New Rochelle,* No. 07–02696–WGY, 606 F.Supp.2d 384, 386 n. 2, 2009 WL 773960 (S.D.N.Y. Mar. 19, 2009) (describing case stated procedure).[2]

## I. PROCEDURAL HISTORY

On December 30, 2006, the Impartial Hearing Officer ("Hearing Officer") issued a decision ordering the District to provide Parents with additional basic speech therapy and parent counseling. The District did not appeal these awards and they are not before this Court. The Hearing Officer also awarded Parents reimbursement and advance compensation for specialized, anti-stuttering speech therapy. He further denied the Parents' request for reimbursement for ten hours per week of 1:1

---

**1.** Of the District of Massachusetts, sitting by designation.

**2.** Derived from the procedures of the courts of the Commonwealth of Massachusetts, *see, e.g., Parker v. Morrell,* 59 Mass.App. Dec. 34 (Mass.App.Div.1976), the "case stated" procedure is firmly established in the jurisprudence of the First Circuit. *See, e.g., Situation Mgmt. Sys. v. ASP Consulting, LLC,* 560 F.3d 53, 57 (1st Cir.2009); *Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.,* 972 F.2d 426, 429 n. 7 (1st Cir.1992); *Boston Five Cents Sav. Bank v. Sec'y of Dep't of Hous. & Urban Dev.,* 768 F.2d 5, 11–12 (1st Cir.1985); *Bunch v. W.R. Grace & Co.,* 532 F.Supp.2d 283 (D.Mass.2008). It is a most helpful procedural device. In this session of the Court, it works like this: whenever cross motions for summary judgment reveal that the relevant facts appear without significant dispute, the courtroom deputy clerk offers the parties to treat the case as a case stated. Should they accept, as was the case here, the Court treats the undisputed facts as the established record and draws the reasonable inferences therefrom without the necessity of drawing adverse inferences against each moving party, see Fed.R.Civ.P. 56. The facts of the case being established, the Court affords each party 30 minutes for final argument (not the usual 10 minutes per party when hearing argument on a motion). In due course, the Court enters findings and rulings as required by Fed. R.Civ.P. 52(a).

applied behavior analysis therapy ("behavior therapy"). In addition, the Hearing Officer ruled that the District denied M.A. a free appropriate public education by failing to provide a functional behavior assessment to better its understanding of and counteract certain behaviors that interfered with M.A.'s learning. Mayerson Aff., Ex. C [Doc. No. 18]. The parties appealed to the State Review Officer ("Review Officer"), who denied Parents' appeal and granted the District's cross-appeal. Mayerson Aff., Ex. F. The Review Officer limited the Parents' specialized speech therapy award to reimbursement for the six weeks of therapy incurred prior to the end of the 2005–2006 school year. He did not award prospective compensation for specialized speech therapy for the upcoming school year. Parents appealed the Review Officer's decision to this Court.[3]

## II. FINDINGS OF FACT

M.A. experienced severe developmental delays since birth and was diagnosed with pervasive developmental disorder in November 2004. Def.'s Statement of Facts ¶ 25, 43 [Doc. No. 15, Ex. 3]. Although the District initially classified M.A. as "other health impairment," the parties stipulated at the administrative hearing that M.A. would be classified as autistic for purposes of determining his eligibility for educational services. Mayerson Aff., Ex. F at 7. On April 27, 2004, the Committee on Preschool Special Education convened and developed an individualized education program ("education program") for M.A.

which included ten hours of 1:1 behavior therapy. Def.'s Statement of Facts ¶ 30. E.A. asked the District to provide an additional ten hours of 1:1 behavior therapy at home. Id. ¶ 31. The District declined her request. Id. ¶ 37. At no time did any evaluations indicate that M.A. should receive extended day services in the form of additional at home 1:1 behavior therapy. Def.'s Statement of Facts ¶ 64, 72. Nor did anyone suggest that M.A. needed a functional behavior assessment. Mayerson Aff., Ex. F at 16. M.A.'s stuttering problem was noticed at the end of the 2004–2005 school year and was initially addressed by adding speech therapy to his summer program and during the following school year. Def.'s Statement of Facts ¶ 60–61, 91. M.A.'s stuttering grew worse in the spring of 2006 and he was referred to a specialist who determined that M.A. needed more intensive therapy with someone who had expertise in stuttering. Id. ¶ 99.

## III. RULINGS OF LAW

### A. Legal Standards

 Under the IDEA "[a]lthough school officials' decisions are subject to independent judicial review, the responsibility for determining whether a challenged education program will provide a child with an appropriate public education rests in the first instance with administrative hearing and review officers." P., ex rel. Mr. and Mrs. P. v. Newington Bd. of Educ., 546 F.3d 111, 118 (2d Cir.2008)

3. Parents' Complaint alleges that M.A. received speech and language therapy for which the Hearing Officer granted reimbursement and further alleges that the Review Officer reversed the Hearing Officer on this issue. Compl. ¶¶ 3, 31–33. These allegations are not supported by the record. The Hearing Officer did not award reimbursement for speech services. It does not appear that M.A. received speech services paid for by Parents prior to

receiving the specialized, anti-stuttering speech services in May of 2006. The Review Officer explicitly noted that the prospective award of additional speech services and parent counseling was not raised on appeal by either party. Mayerson Aff. Ex. F, at 8 n. 7. Because these rulings of the Hearing Officer were not appealed, they are not properly before this Court.

(internal quotation marks omitted). Thus, "[w]hile federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir.1998)(internal citations omitted). "Deference is particularly appropriate when ... the state hearing officer's review has been thorough and careful." *Id.* Thus, the standard of review "is tinged with a significant degree of deference to the state educational agency, as we are essentially acting in an administrative-law-style capacity." *Newington*, 546 F.3d at 118; *see also Lillbask v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n. 3 (2d Cir.2005) (noting that "a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact. Rather, the motion serves as a pragmatic procedural mechanism for reviewing a state's compliance with the ... IDEA.") (internal quotation marks omitted).

■ The IDEA mandates that states receiving certain federal funds provide a free appropriate public education to children with disabilities. *See* 20 U.S.C. § 1401(8). To meet the statutory standard such an education must be administered in accordance with the individualized education program. *Id.* If a state fails to provide a free appropriate public education, a child's parents may send him to a private program and seek retroactive tuition reimbursement from the state. *Frank G. v. Board of Educ. of Hyde Park*, 459 F.3d 356 (2d Cir.2006). Parents challenging an individualized education program are entitled to such reimbursement if the court determines that the proposed education program was procedurally or substantively inadequate and the private schooling obtained by the parents is appro-

priate for the child's needs. *Id.* at 363. In such challenges, the burden of proof falls upon the party seeking relief. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). Additionally, compensatory damages are generally not available absent gross violations of the IDEA that result in nearly complete denial of educational services. *Mrs. C. v. Wheaton*, 916 F.2d 69, 75 (2d Cir.1990).

## B. The Review Officer's Decision

■ The Review Officer ruled that the burden of persuasion fell on the Parents pursuant to the Supreme Court's holding in *Schaffer*, 546 U.S. at 62, 126 S.Ct. 528, that "[t]he burden of proof in an administrative hearing challenging an education program is properly placed upon the party seeking relief," Citing *Harper v. Virginia Department of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the Review Officer noted that Supreme Court holdings "must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." Parents' argue that such a holding violates the ex post facto clause of the United States Constitution. Pls.' Mem. Law 6 [Doc. No. 19]. There is no authority for such a proposition and the Review Officer was correct to use the *Schaffer* standard.

■ Parents challenge the holding of the Hearing Officer that M.A.'s classification as autistic was moot because the District agreed to stipulate to this classification at the hearing. Compl. ¶ 43. Parents argue that had M.A. originally been classified as autistic, instead of "other health impairment," M.A. would have received speech and language therapy and Parents would have received counseling and training pursuant to N.Y. law. 8 N.Y.C.R.R. 200.13. As noted above, the Hearing Offi-

cer awarded Parents speech therapy and counseling in quantities that satisfy New York law; the District did not appeal this award; and these claims are not properly before this Court.

Parents also argue that the misclassification amounted to a substantive flaw in M.A.'s education program, entitling them to reimbursement for the additional hours of 1:1 behavior therapy. Compl. ¶¶ 52–55. The Review Officer found that M.A.'s classification as "other health impairment" rather than autistic was not a substantive flaw in the education program. Mayerson Aff., Ex F at 14. Under the standard set forth in *Board of Education v. Rowley*, 458 U.S. 176, 207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the education program must be "reasonably calculated to enable the child to receive educational benefit[s]." *Cited in Cerra v. Pawling Cent. School Dist.*, 427 F.3d 186, 194 (2d Cir. 2005). M.A.'s education program for the 2005–2006 school year included only one hour of 1:1 behavior therapy, but the special education class that M.A. was placed in utilized a looser form of behavior therapy throughout the day. The neurologist who diagnosed M.A. with pervasive developmental disorder recommend 14 hours per week of behavior therapy. The precise allocation of behavior therapy hours between 1:1 and group and between home and school is the type of educational judgment that is entitled to deference. The District's program included enough behavior therapy to qualify as "reasonably calculated" under *Rowley.*

Although the Hearing Officer ruled that the failure to conduct a functional behavior assessment denied M.A. a free appropriate public education for the 2005–2006 school year, he appears to have relied on information that came to light only at the end of the school year. Mayerson Aff., Ex. C at 2 (noting that the classroom teacher's evaluation from May 20, 2006 highlighted non-compliant behaviors). As the Review Officer correctly pointed out, such evidence, which was not before the District when M.A.'s education program was being designed, is not helpful. This Court "must not engage in Monday-morning quarterbacking ... but rather consider the propriety of the education program ... at the time it was devised." *J.R. v. Bd. of Educ. of Rye Sch. Dist.*, 345 F.Supp.2d 386, 395 (S.D.N.Y.2004). In light of the evidence that was before the Committee on Special Education at the time it designed the 2004–2005 education program, it does not appear that a functional behavior assessment was required. In fact, none of the evaluation reports then available recommended that M.A. undergo a functional behavior assessment. Mayerson Aff., Ex. F at 16.

Parents nevertheless contend that because the Review Officer acknowledged that M.A. "engaged in behaviors that impeded his learning" a functional behavior assessment should have been performed pursuant to New York state law. Compl. ¶¶ 24, 26, 28. The IDEA contains no such requirement. Where there are interfering behaviors, all that the IDEA requires is that the District "consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior." 20 U.S.C. § 1414(d)(3)(B)(i). The Review Officer's decision notes several strategies that were used exactly as the IDEA prescribes: verbal, visual, and physical cues, repeated prompting, and the creation of opportunities for child-directed learning. Mayerson Aff. Ex. F, at 15.

Without analyzing the legal questions involved, the Hearing Officer awarded Parents compensatory damages consisting of payment for specialized speech therapy for the 2006–2007 school year. The Review Officer overturned this award. Compensatory damages are available only

when there is a gross violation of the IDEA resulting in a near total denial of educational services to an individual who is no longer eligible for public education due to his or her age. *Wheaton,* 916 F.2d at 75 (1990). Thus, a student who was excluded from school for a substantial period of time and has subsequently reached the age of twenty-one would be entitled to compensatory services. *Burr by Burr v. Ambach,* 863 F.2d 1071, 1075 (2d Cir.1988). This is manifestly not the case here, where M.A. is five years old. Parents also have not shown that the District's failure to provide specialized speech therapy rises to the nature of a "gross violation," as M.A. was not excluded from school for any period of time.

## IV. CONCLUSION

Because Parents cannot show that they are entitled to more relief than what they have already received, judgment shall enter for the District.

SO ORDERED.